UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                               :
FITORY ARJAM,                  :
                               :    Civil Action No. 04-5438 (JAP)
              Petitioner,      :
                               :
         v.                    :    OPINION
                               :
JOHN D. ASHCROFT, et al.,      :
                               :
              Respondents.     :
_____:
```

**APPEARANCES:**

```
Petitioner pro se              Counsel for Respondents
Fitory Arjam                   John G. Silbermann, Esquire
#87747                         Asst. U.S. Attorney
Middlesex Co. Adult Corr. Ctr. 970 Broad Street
P.O. Box 266                   Suite 700
New Brunswick, NJ 08903        Newark, NJ 07102
```

**PISANO**, District Judge

Petitioner Fitory Arjam, an alien currently detained at Middlesex County Adult Correctional Center, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The Respondents are the Attorney General of the United States, the Department of Homeland Security, BICE District

_____

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.  ...
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Director Andrea Quarantillo, and Warden Edmond C. Cicchi.

## I.  BACKGROUND

Petitioner is a native of the Republic of Sudan.  He entered the United States in 1984 or 1985 and became a lawful permanent resident in 1990.  Based upon convictions for possession of controlled substances, Petitioner was ordered removed on May 27, 1997.  The removal order became final on June 26, 1997, when Petitioner's time to appeal expired.  On August 19, 1997, officials of the Sudanese Mission in New York agreed to issue the appropriate travel documentation.

On December 5, 1997, the Immigration and Naturalization Service issued a Final Notice of Immigration Bond Breach after Petitioner failed to appear for an interview scheduled for September 26, 1997.  Petitioner was taken into INS custody on May 16, 2002.

Petitioner then filed a Motion to Reopen and for Stay of Removal.  On May 29, 2002, an Immigration Judge issued a stay of removal pending action on Petitioner's Motion to Reopen.  By Decision and Order dated June 17, 2002, the IJ denied Petitioner's Motion to Reopen and dissolved the stay of removal. Petitioner appealed to the Board of Immigration Appeals.

By Order dated October 4, 2002, the BIA affirmed the IJ's decision.  Petitioner filed a Petition for Review with the U.S. Court of Appeals for the Third Circuit.  Following transfer of

2

the Petition for Review to the Court of Appeals for the Second Circuit, Petitioner withdrew his appeal on April 7, 2004.

On April 14, 2004 and October 25, 2004, the Bureau of Immigration and Customs Enforcement conducted Post-Order Custody Reviews for Petitioner.

Petitioner had provided to immigration authorities a translated birth certificate identifying his father as Guma Arjam.  On August 1, 2004, a State Department officer in Sudan advised Detention Officer Kerry Gill that local authorities in Sudan had determined, with respect to Petitioner's translated birth certificate, that there was no such birth registration or page number in their archives and that all of the information contained in the birth certificate was "bogus."  (Affidavit of John G. Silbermann, Ex. A at 25.)

On August 26, 2004, Petitioner was served with a Warning for Failure to Depart and an Instruction Sheet, detailing Petitioner's obligation to assist in effecting his removal from the United States.  On October 25, 2004, DO Gill noted Petitioner's continuing failure to provide immigration officials with evidence of his identity and citizenship and recommended that Petitioner be considered non-cooperative until he provided the evidence required by the Sudanese Government for travel document issuance.  On October 27, 2004, Petitioner was served with a Notice of Failure to Comply indicating that Petitioner's

3

removal period was extended for failure to cooperate.  (Ex. A at 30.)  This Petition followed.

Petitioner contends that he has cooperated with efforts to remove him by providing the translated copy of his birth certificate.

Respondents contend that Petitioner has failed to cooperate, not only because the translated birth certificate is "bogus," but also because Petitioner has provided multiple names for his father, including Guma Arjam, Goama Arjam, Gimah Hamdan, and Guma Hamdon Arjam.  Petitioner counters that the kinship naming system in Sudan is very complex and that persons may be known by several names.  Petitioner acknowledges the "mess" he created by "misrepresenting" his father's name, but states that the misrepresentation cannot be considered "material."  (Petitioner's Response at 8.)

## II.   <u>ANALYSIS</u>

Post-removal-order detention is governed by 8 U.S.C. § 1231(a).  Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period."

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is

4

released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days. However, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard. Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a resident alien must be released if he can establish that his removal is not reasonably foreseeable. See Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).

Thus, the alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to rebut that showing. Zadvydas, 533 U.S. at 699-701. Here, the government contends that the six-month presumptively-reasonable period of Zadvydas does not apply because Petitioner has acted to prevent his own removal by failing to provide accurate identification information. See 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary

5

to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.").

Federal courts have recognized that "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal.  The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003) (cited with approval in U.S. ex rel. Kovalev v. Ashcroft, 71 Fed.Appx. 919, 924 (3d Cir. 2003).

Here, because of his failure to cooperate, it appears that Petitioner has failed to meet his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future.  Petitioner admits that he has confused the issue of his identity by providing multiple names for his father. Petitioner has numerous family members in the United States, including two brothers, a paternal uncle, and a cousin, who could presumably assist him in establishing his identity.  It appears that Petitioner has not provided any information other than the rejected translated birth certificate to establish his identity. It is incumbent upon Petitioner to determine from Sudanese authorities what information would establish his identity and to provide that information.  Accordingly, this Court will deny habeas corpus relief at this time.

6

As a caveat to this ruling, however, the Court notes that the government bears some responsibility for articulating the information it requires from Petitioner and for focusing its efforts on obtaining appropriate documentation in order to expedite the removal, including obtaining helpful information from Petitioner's family members.  This Court shall consider a renewed application for relief if, after full cooperation from Petitioner, the government remains unable to effectuate his removal.

### III.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be denied.  An appropriate Order follows.


Date:      August 3, 2006          /s/ JOEL A. PISANO
_____    United States District Judge

Original: Clerk
cc:        Judge Arleo
           All Parties
           File